KOHLER COMPANY, INC., Plaintiff v. THOMAS H. McIVOR, Defendant

No. COA05-339-2

(Filed 2 May 2006)

### 1. Pleadings— sanctions—Rule 11—pleadings well-grounded in fact

A de novo review revealed that the trial court did not err in a breach of a noncompetition agreement case by denying defendant former employee's motion for sanctions under N.C.G.S. § 1A-1, Rule 11, because: (1) there was no clear definition of the term "Mid-Atlantic" to support the allegation that plaintiff knowingly misstated these factual matters for Rule 11 purposes; (2) plaintiff employer never made an admission that the employee had not violated the agreement as alleged in the complaint; and (3) defendant did not challenge findings supporting the trial court's denial of Rule 11 sanctions including that he was the local contact for local divisions of national builders, that he had access to proprietary information or that when reminded of the agreement's terms, he responded that he believed it was unenforceable and that he welcomed any attempts to stop him from competing.

### 2. Pleadings— sanctions—Rule 11—legal sufficiency of complaint and memorandum—improper purpose prong

The trial court did not err by concluding that defendant employer's complaint and memorandum in support of the motion for a temporary restraining order were legally sufficient and did not require N.C.G.S. § 1A-1, Rule 11 sanctions, because: (1) plaintiff employer's verified complaint is facially plausible; and (2) plaintiff dismissed its claim within a reasonable time after defendant resigned his employment with the other pertinent company thereby providing the primary relief sought in this litigation.

### 3. Costs— attorney fees—abuse of discretion standard

The trial court did not abuse its discretion in a breach of a noncompetition agreement case by failing to grant defendant employee's motion for attorney fees under N.C.G.S. § 6-21.5, because the appellate court has already denied defendant's argument that the case lacked any justiciable issues of law and fact.

**KOHLER CO. v. McIVOR**

[177 N.C. App. 396 (2006)]

Appeal by defendant from order entered 13 October 2004, and amended 15 October 2004, by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 October 2005.

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by John D. Cole and Kelly S. Hughes, for plaintiff-appellee.*

*Ferguson, Stein, Chambers, Adkins, Gresham & Sumter, P.A., by John W. Gresham, for defendant-appellant.*

HUDSON, Judge.

Defendant Thomas H. McIvor appeals an order denying sanctions and fees pursuant to Rule 11. N.C. Gen. Stat. § 1A-1, Rule 11(a) (2003). In an opinion filed 20 December 2005, we affirmed. *See Kohler Company, Inc. v. McIvor,* 175 N.C. App. 247, —— S.E.2d —— (2005). Defendant filed a petition for rehearing on 24 January 2006, which we allowed. We also note that, after the case was calendared, defendant filed an amendment to the record which is now before the panel for review. Having now reheard the matter, we issue this decision modifying and superseding the previous opinion.

On 14 October 2003, plaintiff Kohler Company, Inc., ("Kohler") filed a complaint and moved for a temporary restraining order ("TRO"), alleging that defendant was in breach of a non-competition agreement ("the agreement"). The court issued the TRO *ex parte*, enjoining defendant from working in violation of the agreement. Following another *ex parte* hearing on 21 October 2003, the court entered a preliminary injunction against defendant. Defendant moved for relief from the preliminary injunction, which motion the court denied. On 21 November 2003, defendant moved to stay the injunction, which motion the court also denied. Defendant appealed the preliminary injunction order and the order denying relief, and moved this Court for a temporary stay, which we allowed. One week after defendant filed his brief with this Court, Kohler voluntarily dismissed its action with prejudice, rendering the appeal moot.

Defendant then moved for sanctions pursuant to Rule 11 and for attorney fees. After a hearing, the trial court denied defendant's motion for sanctions and fees. Defendant appeals. As explained below, we affirm.

In November 2000, defendant began working for Kohler, a plumbing manufacturer, as a sales representative and signed a non-compete

agreement. The agreement precluded defendant from selling products that compete with Kohler in all of North America for one year after defendant's separation from the company. Defendant's sales territory included South Carolina, part of western North Carolina, the Charlotte region, and Augusta, Georgia. On 18 September 2003, defendant notified his manager that he planned to resign, move to southern California, and join another plumbing manufacturer. After returning materials and equipment to Kohler, defendant began working in southern California, but ultimately resigned his position there due to Kohler's lawsuit.

On 22 September 2003, before he left for California, defendant gave his attorney's business card to his manager at Kohler. Kohler did not serve the pleadings on defendant's counsel, and gave no notice to defendant or his counsel of the TRO hearing. At the hearing, Kohler's counsel stated that defendant was served in North Carolina, although defendant had actually been served in California only four days prior to the hearing. Kohler's counsel also stated that

> [o]n Friday (October 17, 2003), you called his house and his voice mail answers the phone. Today (October 21, 2003), if you call that number's been cancelled. So he's [defendant] been scurrying to erase any sign of residence here as quick as he can. I suppose to support this motion to dismiss . . . .

In fact, defendant's phone bill showed that his Charlotte phone number was disconnected on 22 September 2003. During the hearing, the court misread the agreement's geographic restriction as "nationwide," when it actually extended to all of North America. Kohler's counsel did not correct the court's error.

Neither defendant nor his counsel attended the preliminary injunction hearing, which actually took place several hours prior to its scheduled time. At the hearing, Kohler's counsel stated incorrectly that defendant was involved in national deals and worked with national contractors. Plaintiff's manager, who was present at the hearing, did not correct the misstatements.

Defendant assigns error to the following conclusions:

6. Plaintiff's Verified Complaint and supporting Affidavits satisfy the certification requirements of Rule 11. On their face, these papers set out facts alleging that [defendant] (a) accepted employment with one of Plaintiff's direct competitors in violation of the non-compete provision of the Agreement; and (b) improp-

KOHLER CO. v. McIVOR

[177 N.C. App. 396 (2006)]

erly retained a variety of confidential information that should have been returned to Kohler, in violation of the Agreement and North Carolina statutory law.

***

9. North Carolina law on this issue is simple enough: "In deciding which law should govern interpretation of a contract, North Carolina follows the principle of *lex loci contractus*, which provides that the law of the state where the last act occurred to form a binding contract should apply." *NAS Surety Group v. Precision Wood Products*, 271 F. Supp. 776, 780 (M.D.N.C. 2003). *Accord Walden v. Vaughn*, 157 N.C. App. 507, 510, 579 S.E.2d 475, 477 (2003). Applying it to the muddled facts of this case, however, would test the most seasoned of choice of law practitioners, given that three jurisdictions (Virginia, North Carolina, and Wisconsin) arguably fit the bill.

***

11. While the Court is tempted to tackle this bar exam puzzler, the critical question, for purposes of Rule 11, is whether Plaintiff and its counsel made a "reasonable inquiry" before settling on their choice of North Carolina law. The Court concludes that they did. In particular, on the date Plaintiff filed its Verified Complaint, Kohler and its counsel had adequate grounds for believing, based on the documents available to them, that McIvor had accepted Plaintiff's offer of employment in North Carolina on November 6, 2000, and that this acceptance was the last act necessary to make the Agreement binding.

12. Defendant complains that he included the North Carolina address of his girlfriend (now wife) at Plaintiff's behest so as not to confuse Plaintiff's Human Resources Department, presumably because Defendant was being hired to work in North Carolina. Nevertheless, there is no evidence that Plaintiff knowingly kept this information from its attorneys, or that it even maintained records from which it could cull this obscure fact almost three years later.

13. In short, neither a reasonable client nor its attorneys would be expected to discern the choice of law machinations resulting from the bizarre execution of an employment agreement by a mid-level sales executive and a multinational conglomerate, which occurred nearly three years before the filing of the Verified

Complaint. As a result, Kohler's decision to advocate for the application of North Carolina law was reasonable.

\* \* \*

15. Plaintiff's legal argument was facially plausible. Specifically, while Defendant's arguments to the contrary are compelling, North Carolina law lends some support for the enforcement of a one-year non-compete provision throughout North America, where (a) the former employer is itself engaged in business throughout the world; (b) the former employee takes a position in the same line of business with a company that is one of the former employer's principal competitors; and (c) the former employee makes clear his intent to solicit business from the former employer's customers. *See e.g. Harwell Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E.2d 316 (1970) (enforcing a two-year restrictive covenant prohibiting employee from competing anywhere in the United States where former employer specifically alleged that its business activities extended throughout the United States and former employee was engaged in active solicitation of former employer's customers); *Market America, Inc. v. Christman-Orth,* 135 N.C. App. 143, 520 S.E.2d 570 (1999) (approving six-month non-competition agreement containing no link to actual customer base and no territorial restriction, where court assumed covenant was intended to reach the entire U.S.)

\* \* \*

16. Defendant spends much time disputing Plaintiff's recitation of Defendant's duties and geographic areas of responsibilities while a Kohler and TOTO employee. Since Plaintiff's claims were not resolved on the merits, however, the Court is left with dueling affidavits and deposition testimony on these and many other factual issues. Rule 11, however, is not an end-around the crucible of a trial to conclusively determine the facts, nor does it authorize the award of sanctions where the evidence is in conflict.

\* \* \*

19. Given its breadth and scope, the Court finds that the Agreement toes the line of facial plausibility under North Carolina law. Nevertheless, three prior judges of this Court preliminarily determined that the Agreement was enforceable. North Carolina cases provide facially plausible support for this view, just as other cases compellingly support the contrary conclusion.

**KOHLER CO. v. McIVOR**

[177 N.C. App. 396 (2006)]

Such a reasonable difference of opinion, however, necessarily defeats Defendant's claim for Rule 11 sanctions. Simply put, Defendant has not shown that Plaintiff's legal argument had "absolutely no chance of success under the existing precedent." *Brubaker*, 943 F.2d at 1373.

\*\*\*

22. Nor did Plaintiff violate the "improper purpose" prong of Rule 11. While Plaintiff is perhaps guilty of using the legal equivalent of a sledgehammer to swat a fly, Plaintiff instituted this suit for a proper purpose—to vindicate its rights under the Agreement. The Court also concludes that Plaintiff acted in good faith by dismissing its claims within a reasonable period after Defendant resigned his employment with TOTO (in effect providing Plaintiff the primary relief sought in this litigation).

[1] Defendant first argues that the court erred in denying his motion for sanctions pursuant to Rule 11. We disagree.

Rule 11 provides, in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record. . . . A party who is not represented by an attorney shall sign his pleading, motion, or other paper. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C. Gen. Stat. § 1A-1, Rule 11(a) (2003). Pursuant to Rule 11, a signer must certify "that the pleadings are: (1) well grounded in fact, (2) warranted by existing law, 'or a good faith argument for the extension, modification, or reversal of existing law,' and (3) not interposed for any improper purpose." *Grover v. Norris*, 137 N.C. App. 487, 491, 529 S.E.2d 231, 233 (2000) (quoting N.C. Gen. Stat. § 1A-1, Rule 11(a)). "A breach of the certification as to any one of these three prongs is a violation of the Rule." *Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992). This Court reviews a trial court's denial or imposition of Rule 11 sanctions *de novo* and

must determine (1) whether the trial court's conclusions of law support its judgment or determination; (2) whether the trial court's conclusions of law are supported by its findings of fact; and (3) whether the findings of fact are supported by a sufficiency of the evidence.

*Renner v. Hawk*, 125 N.C. App. 483, 491, 481 S.E.2d 370, 375, *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997).

In analyzing whether a complaint meets the first certification requirement, we must determine: "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995). "[I]n determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer." *Twaddell v. Anderson*, 136 N.C. App. 56, 70, 523 S.E.2d 710, 720 (1999), *disc. review denied*, 351 N.C. 480, 543 S.E.2d 510 (2000) (internal quotation marks and citations omitted).

Here, defendant contends that discovery materials demonstrate that Kohler and its counsel knew their filings contained incorrect factual allegations and unsupported legal assertions and were aware that pleadings were filed for an improper purpose. Specifically, he contends that the complaint misstates his job duties and territory by alleging that he was the primary contact to Kohler's most important Mid-Atlantic region. Defendant acknowledges that he had responsibility for parts of North and South Carolina, and Georgia, but contends that plaintiff knew he was not in fact the contact for the "Mid-Atlantic" region.

Although plaintiff does not address this issue in its brief, we conclude that the term "Mid-Atlantic" is imprecise and defined quite differently by different entities. We do not find in this record a clear definition of the term "Mid-Atlantic," to support the allegation that plaintiff knowingly misstated these factual matters for Rule 11 purposes. Defendant does not present any definition in his brief of the term "Mid-Atlantic" which would support his contention that it clearly did not include North Carolina.

Defendant also contends that the complaint makes false allegations without qualification regarding the misappropriation of trade secrets and confidential information. However, Kohler responds

KOHLER CO. v. McIVOR

[177 N.C. App. 396 (2006)]

that the allegations in question were made upon information and belief. Defendant cites *Static Control Components, Inc., v. Vogler* as supporting sanctions in this case. 152 N.C. App. 599, 568 S.E.2d 305 (2002). We find *Static Control* distinguishable because the employer in that case "admitted that [the employee] had not violated the agreement, as was alleged in the complaint, and that there was no evidence that [the employee] was unwilling to abide by the agreement." *Id.* at 606, 568 S.E.2d at 310. Here, in contrast, Kohler never made such an admission.

In addition, "[t]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even when the record includes other evidence that might support contrary findings . . . . [and] findings of fact to which plaintiff has not assigned error and argued in his brief are conclusively established on appeal." *Id.* at 603, 568 S.E.2d at 308. Defendant here has not challenged findings that he was the local contact for local divisions of national builders, that he had access to proprietary information or that when reminded of the agreement's terms, he responded that he believed it was unenforceable and that he welcomed any attempts to stop him from competing. These findings, which are conclusive before this Court, support the trial court's denial of Rule 11 sanctions. We overrule this assignment of error.

**[2]** Defendant next argues that Kohler's complaint and memorandum in support of the motion for TRO were legally insufficient and require Rule 11 sanctions. We disagree.

In analyzing whether a complaint meets the second certification requirement, we consider the legal sufficiency of the complaint.

The two-step analysis required under the legal sufficiency prong of the rule requires the following:

"[T]he court must first determine the facial plausibility of the paper. If the paper is facially plausible, then the inquiry is complete, and sanctions are not proper. If the paper is not facially plausible, then the second issue is (1) whether the alleged offender undertook a reasonable inquiry into the law, and (2) whether, based upon the results of the inquiry, formed a reasonable belief that the paper was warranted by existing law, judged as of the time the paper was signed. If the court answers either prong of this second issue negatively, then Rule 11 sanctions are appropriate."

*McClerin*, 118 N.C. App. at 643-44, 456 S.E.2d at 355 (quoting *Mack v. Moore*, 107 N.C. App. 87, 91, 418 S.E.2d 685, 688 (1992)). "[R]eference should be made to the document itself, and the reasonableness of the belief that it is warranted by existing law should be judged as of the time the document was signed." *Adams v. Bank United of Tex. F.S.B.*, 167 N.C. App. 395, 403, 606 S.E.2d 149, 155 (2004) (quoting *Bryson v. Sullivan*, 330 N.C. 644, 656, 412 S.E.2d 327, 333 (1992)). We begin by considering whether plaintiff's verified complaint is facially plausible.

Plaintiff claimed that defendant misappropriated trade secrets or confidential information after leaving his employment. Specifically, plaintiff alleged that defendant had access to price lists, pricing methods and customer lists. Defendant asserts that the memorandum plaintiff filed contemporaneously with its complaint disclosed the alleged trade secrets and confidential information thereby defeating its own claims. However, the complaint sufficiently states causes of action for the claims alleged. Because the complaint is facially plausible, the inquiry is complete, and sanctions are properly denied.

Defendant also argues that Kohler's complaint and memorandum were interposed for an improper purpose, requiring Rule 11 sanctions. We disagree.

Our Courts "have held that '[t]he improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements.'" *Brooks v. Giesey*, 334 N.C. 303, 315, 432 S.E.2d 339, 345 (1993) (quoting *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337). "[E]ven if a paper is well grounded in fact and law, it may still violate Rule 11 if it is served or filed for an improper purpose." *Id.* at 315, 432 S.E.2d at 345-46. Under Rule 11,

> an objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose. In this regard, the relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior. An improper purpose is any purpose other than one to vindicate rights . . . or to put claims of right to a proper test.

*Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (internal quotation marks and citations omitted). "There must be a strong inference of improper purpose to support imposition of sanctions." *Bass v. Sides*, 120 N.C. App. 485, 488, 462 S.E.2d 838, 840 (1995). "[T]he Rule 11 movant's subjective belief that a paper has been filed

for an improper purpose is immaterial in determining whether an alleged offender's conduct is sanctionable." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689.

Defendant contends that plaintiff's counsel provided information that they knew was inaccurate to the court at the preliminary injunction hearing. Specifically, plaintiff's counsel stated that defendant had been served with process in North Carolina, rather than in California, and that a phone call was made to defendant's voicemail on 17 October 2003, when defendant's phone had actually been disconnected prior to that date. Defendant further states that plaintiff's counsel further showed "absolute intransigence" by stating that no evidence could convince them that defendant's phone was disconnected prior to the alleged call to his voicemail. Finally, defendant contends that plaintiff's counsel failed to correct the court's apparent misunderstanding of the geographic scope of the agreement at the preliminary injunction hearing. Defendant asserts that this silence and the phone call comments were calculated to discourage the court from considering the evidence regarding defendant's California residence in his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. However, as the trial court noted in conclusion 22, plaintiff dismissed its claims within a reasonable time after defendant resigned his employment with TOTO, thereby providing "the primary relief sought in this litigation." The trial court properly concluded that the circumstances failed to show an improper purpose. We overrule this assignment of error.

[3] Finally, defendant argues that the trial court abused its discretion in failing to grant his motion for attorney fees pursuant to N.C. Gen. Stat. § 6-21.5. We disagree.

The statute provides, in pertinent part:

> In any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

N.C. Gen. Stat. 6-21.5 (2003). "The decision to award or deny the award of attorney fees [pursuant to N.C. Gen. Stat. § 6-21.5] will not be disturbed on appeal unless the trial court has abused its discretion." *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 528, 586 S.E.2d 507, 513 (2003). Defendant relies on the

**ISOM v. BANK OF AM., N.A.**

[177 N.C. App. 406 (2006)]

arguments discussed and rejected *supra* to establish the lack of any justiciable issues of law and fact. Having previously determined that those arguments lack merit, we likewise overrule this assignment of error.

Affirmed.

Judges BRYANT and CALABRIA concur.